NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILLIAM CONOVER, | : | |
| | : | Civil Action No. 11-6324 (PGS) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DR. MERIL MAIN, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

**WILLIAM CONOVER**, Petitioner pro se
449
S.T.U Annex
P.O. Box 905
Avenel, N.J. 07001

**DAVID L. DACOSTA**, Counsel for Respondents
Office of the N.J. Attorney General
Department of Law & Public Safety
25 Market Street
P.O. Box 112
Trenton, N.J. 08625

**SHERIDAN**, District Judge

Petitioner William Conover ("Petitioner"), a civilly committed individual, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   The respondents are Superintendent Dr. Meril Main and the Attorney General of New Jersey.   For the reasons stated below, the Petition will be denied.

## I. BACKGROUND

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1)[1], will simply reproduce the recitation of facts as set forth by Superior Court of New Jersey, Appellate Division:

> The crimes that led to W.X.C.'s present commitment all took place in 1992 when W.X.C. was twenty-five years old. W.X.C. burglarized his first victim's home twice when she was not in the house. On April 17, 1992, W.X.C. entered the home for a third time and, at knifepoint, raped the victim, a young woman. After committing the assault, W.X.C. demanded money and, when the victim had none, stole her VCR. According to various psychological reports, W.X.C. found it sexually exciting to be in the victim's home during the first two burglaries, even while she was not there.
>
> On June 4, 1992, W.X.C. entered another home, this time using a key he had found outside, and raped a woman after telling her he had a gun. W.X.C. then made her drive him to an ATM machine, where he forced her to withdraw and give him approximately $600. He also stole two of the victim's rings. On October 22, 1992, W.X.C. entered a rest home and overpowered a female employee. He dragged her into an empty bedroom and demanded that she perform an oral sex act on him. The police were called and W.X.C. attempted to flee but was apprehended.
>
> In his statement to the police, W.X.C. admitted to committing all three assaults. On October 5, 1993, pursuant to a negotiated agreement, W.X.C. pled guilty to two counts of first degree aggravated sexual assault, N.J.S.A. 2C:14–2(a), first degree kidnapping, N.J.S.A. 2C:13–1(b), and two counts of first degree armed robbery, N.J.S.A. 2C:15–1. The plea agreement called for various consecutive and concurrent sentences, aggregating twenty-four years imprisonment, with a twelve-year period of parole ineligibility.
>
> Prior to his sentencing, Dr. Mark Frank, a clinical psychologist, evaluated W.X.C. to determine if he should be committed to the Adult Diagnostic and Treatment Center (ADTC) for sex offender treatment, pursuant to N.J.S.A. 2C:47–1 to –8; R. 3:21–3. Dr. Frank determined that "the 'taking' of sex by [W.X.C.] has no more meaning for him than the taking of money or property." Based on this finding, Dr. Frank determined that W.X.C.'s criminal sexual behavior was not compulsive and

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

he was therefore not a viable candidate for sex offender treatment pursuant to N.J.S.A. 2C:47–1. Dr. Frank also noted that W.X.C. had a history of drug and alcohol abuse and recommended that he receive psychotherapy and attend drug and alcohol treatment programs.

The trial judge sentenced W.X.C. on April 4, 1994. W.X.C. requested that the court consider that he had admitted to committing the subject offenses, that he was remorseful, and that he himself was sexually abused as a child. After finding no mitigating factors applied, the judge sentenced W.X.C. to twelve years of imprisonment for his kidnapping charge, with a six-year period of parole ineligibility, to run consecutively with a twelve-year term, with a six-year period of parole ineligibility for the two counts of aggravated sexual assault and the two counts of armed robbery. W.X.C. subsequently filed a pro se motion to amend the sentence, arguing that the judge erred in not finding W.X.C.'s own history of sexual abuse as a child to be a mitigating factor. The trial judge denied his motion. W.X.C. later admitted, during subsequent evaluations, that he was not abused as a child but lied in the hope that his sentence would be reduced.

W.X.C.'s criminal record prior to the subject sexual assaults revealed seven adjudications of delinquency as a juvenile, which included assault, burglary, and possession of a controlled dangerous substance. As an adult, his convictions included obstructing police and assault.

On April 23, 2007, prior to W.X.C.'s scheduled release from prison, the State filed a petition to civilly commit him under the SVPA. W.X.C. filed a motion arguing that the SVPA is punitive because he was not afforded sex offender treatment during the period of his incarceration and, therefore, the statute is unconstitutional.

The SVPA trial judge held a commitment hearing on July 23 and 25, 2007. She began by denying W.X.C.'s motion, rejecting his argument that the SVPA was unconstitutional on its face. The judge reserved ruling on whether the statute was unconstitutional as applied, pursuant to W.X.C.'s argument that he should have been provided with sex offender treatment while he was serving his sentence.

At the civil commitment hearing, the State produced two expert witnesses, Dr. Brian Friedman and Dr. Evan Feibusch. No other witnesses testified.

Dr. Friedman testified that in rendering his opinion, he reviewed "all of the police documents, investigation reports, presentence reports, Judgments of Conviction, [and] victim statements." He also examined W.X.C.'s statement to police, his prison records, and "reports completed over the years by different evaluators...." When questioned about his reliance on reports by other mental health professionals, Dr. Friedman explained: "I utilize them just to get a little bit of kind of a snapshot of how an individual presented at varying points in the past....

3

However, ... I went through all the original documents myself." He also noted "I do not rely on other professionals' diagnoses or opinions regarding risk. I formulate my own conclusions." Dr. Friedman attempted to interview W.X.C., but he refused. W.X.C. likewise refused to participate in any psychological testing.

Dr. Friedman testified that W.X.C. tended to pair sexual arousal and violence, compulsively masturbated to movie scenes depicting rape or death, and committed the rapes despite having an acceptable consenting sexual partner. Also of note was the fact that W.X.C.'s first two rapes were planned, while his third attack was spontaneous, perhaps showing a decreasing ability to control himself. Dr. Friedman opined that W.X.C.'s reduced inhibitions from drug and alcohol abuse may also increase his risk to re-offend.

In terms of W.X.C.'s personality traits, Dr. Friedman expressed concern that W.X.C. did not appear to have any genuine empathy for his victims and consistently used manipulation to avoid or reduce punishment. For example, W.X.C. created a fictional history of child abuse in an attempt to have his sentence reduced. Dr. Friedman also referred to various reports from other evaluators who noted that W.X.C.'s requests for treatment of any kind seemed insincere and geared towards avoiding responsibility for his actions. For example, W.X.C. admitted that he only attended substance abuse treatment programs "to get some help in sentencing" and "not because he actually wanted to change his behavior." Generally, Dr. Friedman found that W.X.C. was deceitful, lacked remorse for his behavior, was impulsive, and had poor behavioral controls.

Dr. Friedman diagnosed W.X.C. with antisocial personality disorder, which is a risk factor for recidivism. He also diagnosed him with paraphilia, NOS (non-consenting), meaning that W.X.C. has experienced recurrent and intense fantasies, urges, and behaviors involving non-consensual sexual acts for at least six months. Based on these findings, Dr. Friedman opined that W.X.C. "is highly likely to engage in future acts of deviant sexual behavior as defined by the SVP statute if released into the community at this time."

W.X.C. also declined to be interviewed by Dr. Feibusch. As a result, Dr. Feibusch based his opinion on various psychological reports prepared on prior occasions, police reports, and clinical risk assessment tests. He testified that in reviewing that information he was "mostly looking for things that the evaluatee may have said to the person who is doing the evaluating that's helpful...." He noted "[t]he opinions that are in other evaluators' reports can stimulate my thinking in certain directions, but the opinion contained in my report is my own."

Dr. Feibusch began by calling attention to the fact that W.X.C. had "sexualized" breaking into his first victim's home. He also noted that W.X.C.'s assaults had elements of playing out sexual fantasies and observed that the rapes appeared planned and were not committed "in the context of a burglary." Dr. Feibusch also

4

> found it significant that W.X.C. was aroused by viewing movie scenes of women who had been murdered. Like Dr. Friedman, Dr. Feibusch noted W.X.C.'s propensity to manipulate and discussed his attempts to gain sympathy from the sentencing judge by untruthfully stating he was a sexual abuse victim himself. Dr. Feibusch also utilized the Static–99 test, a "well validated actuarial instrument designed to estimate the probability of sexual and violent recidivism among adult males who have been charged with at least one sexual offense." W.X.C. scored a six on this test, placing him in the "high risk" category to re-offend. Based on these considerations, Dr. Feibusch diagnosed W.X.C. with antisocial personality disorder, paraphilia NOS, and possibly sexual sadism and opined that it was "highly likely" that he would re-offend if he was not confined to an institution for treatment.
>
> The trial judge rendered an oral decision on August 20, 2007, finding that W.X.C. remained a sexually violent predator in need of commitment. At that time, the judge denied the portion of W.X.C.'s motion that argued the SVPA was unconstitutional as applied because he had not been afforded sex offender treatment while serving his sentence.

*In re Civil Commitment of W.X.C.*, 972 A.2d 462 (N.J. Super. Ct. App. Div. 2009). The Appellate Division affirmed the decision by the Superior Court. *Id.* Petitioner filed a petition for certification, which was granted by the Supreme Court of New Jersey. *In re Civil Commitment of W.X.C.*, 983 A.2d 201 (N.J. 2009). The Supreme Court of New Jersey affirmed the decision of the Appellate Division and denied Petitioner relief. *In re Civil Commitment of W.X.C.*, 8 A.3d 174 (N.J. 2010). Petitioner's petition for a writ of certiorari to the United States Supreme Court was denied. *W.X.C. v. New Jersey*, 131 S.Ct. 1702 (2011).

Petitioner thereafter filed the instant petition. (ECF No. 1.) He raises the following grounds:

> 1. Petitioner was denied his Eighth Amendment right to the prompt and effective treatment for his serious mental needs, when the state was aware some seven years prior to his release after serving his sentence, civilly committed [sic] Petitioner because of a lack of treatment, is unconstitutional and violates *Estelle v. Gamble* [429 U.S. 97 (1976)].
>
> 2. Petitioner's civil commitment constitutes de facto punishment that violates

fundamental rights guaranteed under both the United States and New Jersey constitutions that cries out for the intervention of this court.

(Pet., ECF No. 1.)   In response to this Court's order, Respondents filed an answer, arguing that Petitioner's first ground is unexhausted and both grounds should be denied on the merits.   (Resp'ts' Answer, ECF No. 7.)   Petitioner did not file a reply.

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....

28 U.S.C. § 2254.

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."   *Cullen v.*

*Pinholster*, 131 S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  *Id.*   A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits.[2]   *See* 28 U.S.C. § 2254(d).   If a claim has been adjudicated on the merits in state court proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).  However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA ... do not apply."  *Lewis*, 581 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

   A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A court must look for "the governing legal principle or principles set forth by the

---

[2] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground."  *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)).  "Section 2254(d) applies even where there has been a summary denial."  *Cullen*, 131 S.Ct. at 1402.  "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision."  *Id.* (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)).

Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quoting *Williams* at 410). As the Supreme Court explained,

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.... Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 131 S.Ct. at 786 (citations and internal quotation marks omitted).

"This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 131 S.Ct. at 1398 (citations and internal quotation marks omitted). The petitioner carries the burden

of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id.*

**B.   Analysis**

**1.   Eighth Amendment**

Petitioner argues that at his sentencing, he requested that he be sent to the Adult Diagnostic and Treatment Center so he could receive treatment. The state court denied his request and sentenced him to a state prison term where he received no sex offender treatment. Petitioner further argues the state was aware that Petitioner needed specific sex offender treatment, however they failed to provide said treatment to him. Petitioner argues that this was a violation of his Eighth Amendment rights, as the state was deliberately indifferent to his serious medical need and had he received the necessary treatment, he would not have been civilly committed after his sentence had finished.

Section 2254(a) of Title 28 of the United States Code gives a district court jurisdiction to entertain a habeas petition brought by a person in state custody on the ground that the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

Federal law provides two avenues of relief to detained persons: a petition for habeas corpus and a civil rights complaint. *See Muhammad v. Close*, 540 U.S. 749, 750, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004). "Challenges to the validity of any confinement or to particulars affecting its

9

duration are the province of habeas corpus ... [and] requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Id.* As the Supreme Court emphasized in *Wilkinson v. Dotson*, 544 U.S. 74, 81, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005), habeas relief is available only when prisoners "seek to invalidate the duration of their confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." *See Wilkinson*, 544 U.S. at 81.

In *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the Supreme Court rejected the notion (adopted by the Kansas Supreme Court) that violation of the liberty interest in being free from detention depends on whether the state is providing treatment to a civilly committed sexually violent predator. Notably, the Supreme Court held that the Act did not violate substantive due process, even though the Kansas Supreme Court had found that Hendricks was not receiving any treatment and that treatment was not even a primary purpose of the Act. The Supreme Court opined:

> It is possible to read [the opinion of the Kansas Supreme Court] as a determination that Hendricks' condition was untreatable under the existing Kansas civil commitment statute, and thus the Act's sole purpose was incapacitation. Absent a treatable mental illness, the Kansas court concluded, Hendricks could not be detained against his will.
>
> Accepting the Kansas court's apparent determination that treatment is not possible for this category of individuals does not obligate us to adopt its legal conclusions. We have already observed that, under the appropriate circumstances and when accompanied by proper procedures, incapacitation may be a legitimate end of the civil law .... While we have upheld state civil commitment statutes that aim both to incapacitate and to treat ..., we have never held that the Constitution prevents a State from civilly detaining those for whom no treatment is available, but who nevertheless pose a danger to others.... Similarly, it would be of little value to require treatment as a precondition for civil confinement of the dangerously insane when no acceptable treatment existed. To conclude otherwise would obligate a

> State to release certain confined individuals who were both mentally ill and dangerous simply because they could not be successfully treated for their afflictions. *Cf. Greenwood v. United States*, 350 U.S. 366, 375, 76 S.Ct. 410, 100 L.Ed. 412 ... (1956) ("The fact that at present there may be little likelihood of recovery does not defeat federal power to make this initial commitment of the petitioner")....
>
> Alternatively, the Kansas Supreme Court's opinion can be read to conclude that Hendricks' condition is treatable, but that treatment was not the State's "overriding concern," and that no treatment was being provided .... Indeed, critical language in the Act itself demonstrates that the Secretary, under whose custody sexually violent predators are committed, has an obligation to provide treatment to individuals like Hendricks ... Even if we accept this determination that the provision of treatment was not the Kansas Legislature's "overriding" or "primary" purpose in passing the Act, this does not ... require us to conclude that the act is [unconstitutional].

*Hendricks*, 521 U.S. at 365-67 (citations and internal quotation marks omitted).

Thus, under *Hendricks*, a state may constitutionally deprive a person of freedom from detention so long as it establishes dangerousness and a mental abnormality that makes it difficult for the person to control his dangerous behavior, regardless of whether or not the State is providing treatment. *See Hendricks*, 521 U.S. at 358, 360. Under *Hendricks*, even if this Court were to rule in Petitioner's favor and find that New Jersey had deprived him of his constitutional rights by failing to provide treatment during his prison sentence, such a ruling would not affect the fact or duration of Petitioner's current civil commitment under the Sexually Violent Predator Act.

Moreover, the Third Circuit has determined that a failure-to-treat claim presents a conditions-of-confinement challenge which is not cognizable in habeas and may only be brought under § 1983. *See Leamer v. Fauver*, 288 F.3d 532 (3d Cir. 2002). In *Leamer v. Fauver*, Charles Leamer, a prisoner sentenced to an indeterminate term of up to 42 years at the Adult Diagnostic and Treatment Center for rape and assault with intent to rape, brought a § 1983 complaint claiming that he was being denied his due process right to treatment by being placed on restricted activity

11

program status. "Under the terms of [Leamer's] sentence, he was to receive specialized treatment for his mental and physical aberrations and be released only when he is capable of making an acceptable social adjustment in the community." *Id.* at 535. This Court had dismissed Leamer's complaint on the ground that the exclusive remedy for his failure-to-treat claim was habeas corpus. The Third Circuit reversed, ruling that: (1) under the unique statutory sentencing scheme, where the term of the sentence depends on the prisoner's response to treatment, the total denial of treatment may violate substantive due process and impose cruel and unusual punishment; and (2) such a failure-to-treat claim could not have been brought under § 2254 and was exclusively cognizable under § 1983. In rejecting the state's argument that the exclusive remedy for Leamer's claims was a habeas petition, the Third Circuit explained the distinction between the habeas remedy and the civil rights remedy as follows:

> Although both § 1983 and habeas corpus allow prisoners to challenge unconstitutional conduct by state officers, the two are not coextensive either in purpose or effect. Habeas relief is clearly quite limited: The underlying purpose of proceedings under the Great Writ of habeas corpus has traditionally been to 'inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful.... Section 1983, in contrast, provides for liability on the part of any state actor who subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction, thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws .... There is only a narrow subset of actions that arguably might properly be brought as either, that is, where the deprivation of rights is such that it necessarily impacts the fact or length of detention.

*Leamer*, 288 F.3d at 540 (citations and internal quotation marks omitted).

Most significantly, the Third Circuit expressly stated that "Leamer could not have brought this claim as a habeas claim." *Leamer*, 288 F.3d at 542. The court explained;

> When examining whether *Preiser* and its progeny require a claim to be brought under habeas, unless the claim would fall within the "core of habeas" and require

12

>sooner release if resolved in the plaintiffs favor, a prison confinement action such as this is properly brought under § 1983. Leamer's claim not only does not fall within the core of habeas; it would not be properly brought under habeas at all. Conversely it was properly brought under § 1983.

*Id*. at p. 544; *see also Lone v. Parker*, 390 F.2d 816, 818 (3d Cir.1968) ("Traditionally, the writ of habeas corpus has functioned to test the legality of confinement rather than the manner in which the detention is administered. Thus habeas corpus is not a proper proceeding to investigate complaints by prisoners of mistreatment since such complaints do not attack the legality of the confinement").

Since release is not an available remedy for violation of Petitioner's Eighth Amendment rights, habeas corpus is not an available remedy and this Court must dismiss this claim for lack of habeas jurisdiction. *See Dickerson v. Diguglielmo*, 306 F. App'x 707, 708 (3d Cir. 2009) (dismissal of habeas petition for lack of jurisdiction was required where "appellants have sought habeas relief by asking for release from prison [but] there is no connection between their claim of illegal confiscation of legal materials and the fact or duration of their confinement, which is the essence of habeas"); *Zapata v. United States*, 264 F. App'x 242 (3d Cir. 2008) (dismissal for lack of habeas jurisdiction is required where inmate challenges prison transfer); *Ganim v. Federal Bureau of Prisons*, 2007 WL 1539942 (3d Cir. May 29, 2007) (same); *Beckley v. Miner*, 125 F. App'x 385 (3d Cir. 2005)(district court lacked habeas jurisdiction over challenge to failure to transfer petitioner to prison offering drug treatment program because favorable judgment would not affect fact or duration of confinement); *Bronson v. Demming*, 56 F. App'x 551, 553-54 (3d Cir. 2002) (habeas relief was unavailable to inmate seeking release from disciplinary segregation to general population, and district court properly dismissed habeas petition without prejudice to any right to

assert claims in properly filed civil complaint, because "[n]o matter what the outcome of Bronson's habeas petition, neither the fact nor the length of his incarceration will be affected"); *Vaughn v. Pa. Dep't of Corr.*, 2008 WL 4279610 (W.D.Pa. Sept.16, 2008) (district court lacks habeas jurisdiction over inmate's claim asserting denial of medical treatment because, if successful, challenge would not have a necessary impact on fact or duration of confinement; moreover, recharacterization of petition as civil complaint is improper). The dismissal is without prejudice to any right Petitioner may have to assert his claim in a properly filed § 1983 complaint.[1]

### 2. "De facto" Punishment

In his second ground for relief, Petitioner argues that his civil commitment constitutes "de facto" punishment that violates fundamental rights guaranteed under both the United States and New Jersey constitutions.

When rejecting this argument from Petitioner, the New Jersey Supreme Court stated the following:

> Defendant's challenge to the SVPA, however, goes beyond a facial attack. Instead, his argument is that even if the statute is not punitive in its ordinary operation, it becomes punitive when used to commit an individual like him. That is, he asserts that the SVPA is punitive as applied to an offender who has completed his incarceration and is then adjudged to be in need of treatment, but who was not previously afforded the opportunity to undergo such treatment while incarcerated. He argues, in essence, that there is an ulterior punitive purpose to the SVPA that renders it unconstitutional as applied to him and others similarly situated.
>
> …
>
> This aspect of defendant's ex post facto challenge, as the Appellate Division pointed out, rests in large measure on a United States Supreme Court opinion that sets out a framework that defendant contends our statute cannot meet. *See Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

---

[1] This Court's dismissal without prejudice should not be construed as a comment on the merits of such a claim under § 1983.

14

…

Focusing on the distinctions between the State's goals of punishment and of providing treatment, the Court declined to equate the loss of liberty occasioned by civil commitment with that imposed after criminal prosecution and rejected the challenge to the statute's constitutionality. [*Allen v. Illinois,* 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986)] at 373-74, 106 S.Ct. at 2994, 92 L.Ed.2d at 307. That background informed the decision in *Hendricks*, in which the Court upheld the constitutionality of a Kansas statute that permitted civil commitment of sexual offenders who were in need of treatment. *Hendricks*, *supra*, 521 U.S. at 371, 117 S.Ct. at 2086, 138 L.Ed.2d at 521. In rejecting a challenge that the statute was punitive, the Court established that the role of treatment in a state's civil commitment scheme is a key consideration for other courts to use when faced with similar attacks on state statutes aimed at civil commitment of sex offenders. *Id.* at 368-69, 117 S.Ct. at 2085, 138 L.Ed.2d at 519.

Five members of the Court joined in the majority opinion in which the Court concluded that the Kansas statute was not punitive. *Id.* at 371, 117 S.Ct. at 2086, 138 L.Ed.2d at 521. Justice Thomas, writing for the Court, addressed the statute by considering its two possible effects. As to sex offenders deemed to be "untreatable," the statute would be constitutional if civil commitment followed a term of imprisonment, even if offenders were to be afforded no treatment during civil commitment. *Id.* at 366, 117 S.Ct. at 2084, 138 L.Ed.2d at 517-18. However, as to those offenders suffering from a disease or defect that is amenable to treatment, a statute that permits their civil commitment must include treatment as one of its purposes. *Id.* at 366-67, 117 S.Ct. at 2084-85, 138 L.Ed.2d at 518.

In that evaluation, the Court commented that the goal of treatment need not be the "primary" or even the "overriding" purpose and that a statute is not unconstitutionally punitive even if treatment is only an "ancillary" purpose. *Id.* at 367, 117 S.Ct. at 2084, 138 L.Ed.2d at 518. Moreover, because the Kansas statute required treatment as part of civil commitment, the fact that the treatment actually afforded to the petitioner was "meager" was not sufficient to undermine the statute's constitutionality. *Id.* at 367-68, 117 S.Ct. at 2085, 138 L.Ed.2d at 518-19.

…The Court did not directly address the issue that is now before us, but both the majority and the concurring member of the Court made clear their guiding principle. The key in evaluating statutes that permit civil commitment following incarceration for sex offenders lies in the meaning and intent of the provisions relating to treatment that will be provided during that eventual period of civil commitment.

…

15

> Applying the clear precedents both from the United States Supreme Court and from this Court, our conclusion remains that the SVPA is remedial and regulatory in nature, and that its incidental effects, including the use of confinement as part of the treatment methodology, do not alter the essential character of the statute. We decline to conclude that the SVPA is transformed into a punitive, and therefore unconstitutional, enactment merely because it applies to some individuals, like defendant, who were not provided with specialized treatment prior to civil commitment.

*In re Civil Commitment of W.X.C.*, 8 A.3d 174 (N.J. 2010).

In *State v. Bellamy*, 178 N.J. 127 (2003), the New Jersey Supreme Court determined that commitment under the SVPA is regulatory, not penal. "The Act focuses on a sex offender's mental condition and the dangers posed to the public. Although the confinement is onerous and has some punitive impact, that impact is the inevitable consequence of the regulatory provisions. That is, the impact is not solely attributable to a punitive legislative intent." *Id.* at 138 (citations and internal quotation marks omitted); *accord In re Commitment of J.M.B.*, 197 N.J. 563, 577 (2009) ("the SVPA is not part of the criminal code and it has been clearly determined that civil commitment under the SVPA is not punitive") (citing *Bellamy*, 178 N.J. at 138).

> The Supreme Court held in *Kansas v. Hendricks*, 521 U.S. 346 (1997), that
>
> [t]he categorization of a particular proceeding as civil or criminal is first of all a question of statutory construction. We must initially ascertain whether the legislature meant the statute to establish "civil" proceedings. If so, we ordinarily defer to the legislature's stated intent .... Although we recognize that a civil label is not always dispositive, we will reject the legislature's manifest intent only where a party challenging the statute provides the clearest proof that the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention to deem it civil. In those limited circumstances, we will consider the statute to have established criminal proceedings for constitutional purposes. Hendricks, however, has failed to satisfy this heavy burden.

*Hendricks*, 521 U.S. at 361 (citations and internal quotation marks omitted).

In *Seling v. Young*, 531 U.S. 250 (2001), the Supreme Court ruled that where the State's highest court has determined that commitment under the State's SVPA is civil, that determination precludes an inmate's double jeopardy and ex post facto challenge based on the punitive nature of the act. "Permitting respondent's as-applied challenge would invite an end run around the Washington Supreme Court's decision that the Act is civil in circumstances where a direct attack on that decision is not before this Court." *Seling*, 531 U.S. at 263-64.

In this case, Petitioner cites no Supreme Court precedent which holds that a civil commitment statute like New Jersey's SVPA violates the Ex Post Facto or Double Jeopardy Clauses. And, as the Court held in *Seling*, the New Jersey Supreme Court's determination that the SVPA is civil precludes Petitioner's double jeopardy and ex post facto challenges. This Court holds that the New Jersey courts' adjudication of Petitioner's claims was not contrary to, or an unreasonable application of *Kansas v. Hendricks* and *Seling v. Young*. *See Talbert v. Goodwin*, 2009 WL 223710, at *8 (D.N.J. Jan. 29, 2009) (holding that SVP is not entitled to habeas relief on claims that SVPA violates double jeopardy and ex post facto clauses). Petitioner is therefore not entitled to habeas relief on Ground Two.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.   No certificate of appealability shall issue.

## IV. CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.   An appropriate Order follows.


DATED: March 15, 2013

*s/Peter G. Sheridan*
PETER G. SHERIDAN
United States District Judge